UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

STEVEN W. SCHNITTKER,                     )
        *Plaintiff*,                          )
                                              )
        *vs.*                                 )      1:12-cv-01694-JMS-MJD
                                              )
CAROLYN W. COLVIN, *Acting Commissioner*  )
*of Social Security Administration*,      )
        *Defendant*.                          )

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Steven Schnittker applied for a period of disability and disability insurance bene-fits from the Social Security Administration ("SSA") on October 19, 2009. After a series of ad-ministrative proceedings and appeals, including a hearing in June 2011 before Administrative Law Judge ("ALJ") Julia Gibbs, the ALJ determined that Mr. Schnittker was not entitled to disa-bility insurance benefits. In October 2012, the Appeals Council denied Mr. Schnittker's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Mr. Schnittker then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to

determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## II.
### BACKGROUND

Mr. Schnittker was thirty-three years old at the time of his disability application, which he filed on October 16, 2009. [Dkt. 12-2 at 54.] He obtained a GED when he was eighteen years old. [*Id.* at 66.] Mr. Schnittker contends he is disabled due to a variety of impairments, which

will be discussed as necessary below.  He was last insured for purposes of disability on September 30, 2009.  [*Id.* at 14.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on July 6, 2011.  [*Id.* at 12-22.]  The ALJ found as follows:

- At Step One, the ALJ found that Mr. Schnittker did not engage in substantial gainful activity[1] since the alleged onset date of his disability, January 1, 2005, through the date he was last insured, September 30, 2009.  [*Id.* at 14.]

- At Step Two, the ALJ found that Mr. Schnittker suffered from the following severe impairments: HIV, chronic obstructive pulmonary disease ("COPD"), migraine headaches, paranoid schizophrenia, attention deficit hyperactivity disorder, anxiety disorder, conversion disorder, posttraumatic stress disorder, and dissociative disorder.  The ALJ, however, concluded that the record did not support Mr. Schnittker's contention that his multiple sclerosis was a medically determinable impairment.  [*Id.* at 14-15.]

- At Step Three, the ALJ found that Mr. Schnittker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  The ALJ concluded that Mr. Schnittker had the residual functional capacity ("RFC") to perform medium, unskilled work.[2]  [*Id.* at 15-17.]  However, the ALJ also concluded, among other things, that Mr. Schnittker had "no more than mild difficulties" in social functioning and had "moderate difficulties" regarding "concentration, persistence or pace."  [*Id.* at 16.]

- At Step Four, the ALJ found that Mr. Schnittker is capable of performing his past relevant work at a restaurant as a table busser because it did not require him to perform the work-related activities precluded by his RFC.  [*Id.* at 20.]

- At Step Five, the ALJ found in the alternative that Mr. Schnittker could perform other jobs existing in the national economy such as a packer, assembler, or cleaner.  [*Id.* at 20-21.]

Based on these findings, the ALJ concluded that Mr. Schnittker was not disabled and thus not entitled to disability insurance benefits.  [*Id.* at 21.]  Mr. Schnittker sought

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

[2] Medium work is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

review of the ALJ's decision from the Appeals Council.  [*Id.* at 7.]  The Appeals Council

denied his request for review on October 1, 2011.  [*Id.* at 2-4.]  Mr. Schnittker's appeal

from that decision is now before this Court.

## III.
### DISCUSSION

Mr. Schnittker challenges the ALJ's decision on four bases, arguing that: (1) substantial

evidence does not support the ALJ's Step Three finding that Mr. Schnittker's schizophrenia did

not meet or equal Listing 12.03, [dkt. 20 at 14-17]; (2) the ALJ erroneously failed to consult a

medical expert when assessing Mr. Schnittker's mental impairments, [*id.* at 18-19]; (3) the ALJ's

adverse credibility determination was patently erroneous and contrary to Social Security Ruling

("SSR") 96-7p, [*id.* at 20-23]; and (4) the ALJ's Steps Four and Five determinations were not

supported by substantial evidence because the hypothetical question posed to the vocational ex-

pert ("VE") did not sufficiently describe Mr. Schnittker's mental impairments, [*id.* at 24].  The

Court will address each argument in turn.

### A.  Whether Mr. Schnittker's Schizophrenia Met the Severity Level Prescribed by Listing 12.03.

The ALJ concluded that Mr. Schnittker's schizophrenia did not meet the severity level

required by Listing 12.03.  [Dkt. 12-2 at 15-17.]  To meet the requisite severity under Listing

12.03, Mr. Schnittker needed to satisfy the requirements of both Paragraphs A and B or the re-

quirement of Paragraph C.  Mr. Schnittker contends that the ALJ ignored his evidence demon-

strating that Paragraphs A and B were met.  [*Id.*]  The Commissioner defends the ALJ's conclu-

sion that the requirements of Paragraph B were not met.  [Dkt. 26 at 6-8.]

Paragraph B of Listing 12.03 requires, in pertinent part, Mr. Schnittker to provide evi-

dence that his schizophrenia resulted in at least two of the following:

- 4 -

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.03.  The ALJ considered each of the four Para-graph B criteria individually and concluded that none of the four were met.  [Dkt. 12-2 at 16.]

Mr. Schnittker's attempt to undermine the ALJ's conclusion on this score is unpersua-sive.  He does not dispute that it is his burden to show "that his impairments meet a listing, and . . . that his impairments satisfy all of the various criteria specified in the listing."  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  Nevertheless, he does not explain which of the four Paragraph B criteria he met, let alone point to the evidence that would support such a con-clusion; instead, he merely argues that Paragraph B criteria were "proved by the claimant's GAF of 50 which was within the totally disabled range of 50 and below."[3]  [Dkt. 20 at 15.]  But the Seventh Circuit has cautioned against relying solely on a GAF score in reviewing the ALJ's dis-ability determination.  "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score."  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted).  While the GAF score is "useful for planning treatment," because it "measures both severity of symptoms *and* functional level" and ultimately "reflects the worse of the two," it "does not reflect the clinician's opinion of function-al capacity."  *Id.*  Relying on these same principles, this Court rejected an almost identical argu-ment advanced by Mr. Schnittker's counsel in another case, *see, e.g.*, *Towne v. Colvin*, 2013 WL 4482409, at *3 (S.D. Ind. 2013), and does so again here.  Accordingly, Mr. Schnittker's sole reli-

---

[3] "GAF" stands for "Global Assessment of Functioning," and "measures a person's overall abil-ity to function."  *Larson v. Astrue*, 615 F.3d 744, 746 (7th Cir. 2010).

ance on the GAF score is insufficient to meet his burden to prove that his schizophrenia meets the Paragraph B criteria of Listing 12.03.[4]

To the extent that Mr. Schnittker's position is that the ALJ improperly ignored the evidence of his GAF of 50 and instead "emphasized another GAF of 55," this too fails to advance his claim. [Dkt. 20 at 15.] It is true, as Mr. Schnittker suggests, that the ALJ "may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *see, e.g.*, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'") (citation omitted). But the ALJ did not rely on Mr. Schnittker's GAF at all in conjunction with her determination that none of the Paragraph B criteria of Listing 12.03 was met. [*See* dkt. 12-2 at 16.] Instead, the ALJ merely assessed the medical evidence supporting each of the four Paragraph B criteria and concluded that they were not met. [*Id.*] Again, Mr. Schnittker does not contend that any of these specific analyses were in error. Moreover, even assuming that the ALJ focused on the evidence that Mr. Schnittker's GAF was 55 rather than 50 in making the Paragraph B determination, as discussed above, Mr. Schnittker's sole reliance on a GAF score is

---

[4] For the first time in his reply brief, Mr. Schnittker provides a one-sentence argument that the ALJ additionally erred in failing to consider "any of the Midtown mental health treatment and evaluation evidence for the period from 5-30-07 to 11-18-09" and cites to over one hundred pages of the record. [Dkt. 27 at 3.] As an initial matter, arguments made for the first time on reply are generally waived. *See Hendricks v. New Albany Police Dep't*, 749 F.Supp.2d 863, 872 (S.D. Ind. 2010). Moreover, the ALJ cited medical records from Midtown Community Mental Health Center in assessing whether Mr. Schnittker's schizophrenia met the requirements of Listing 12.03. [Dkt. 12-2 at 16 (citing Dkt. 12-8, 12-9).] Thus, even looking past both the waiver, his argument is simply incorrect.

insufficient to carry his burden "that his impairments meet a listing, and . . . that his impairments satisfy all of the various criteria specified in the listing."[5]  *Ribaudo*, 458 F.3d at 583.

### B.  The ALJ's Failure to Obtain Expert Medical Testimony

Mr. Schnittker next contends that the ALJ's Step Three determination was in error because it was made without the benefit of expert medical testimony.  [Dkt. 20 at 18-19.]  Specifically, he maintains that the ALJ's Step Three decision was not based on medical evidence but on the ALJ's lay opinion.  [*Id.*]  The Commissioner responds that expert medical testimony is not required when the ALJ's determination is otherwise consistent with the medical evidence presented.  [Dkt. 26 at 9.]  As explained below, the Commissioner is correct.

"Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."  *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).  The expert opinion that must be considered, however, need not take the form of live testimony from an expert.  Instead, the ALJ can rely on evidence from medical experts found in the record, and need only "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled."  *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *see Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) ("If the ALJ believes that [s]he lacks sufficient evidence to make a decision, [s]he must adequately develop the record and, if necessary, obtain expert opinions.").  In other words, the ALJ need only seek out further in-

---

[5] Mr. Schnittker also asserts that the ALJ's "decision must be reversed because it fails to build an accurate and logical bridge from all of the evidence in the record to his [sic] conclusions."  [Dkt. 20 at 16-17.]  Other than a string of citations to case law, he makes no attempt to explain how the ALJ failed in this respect, let alone specifically identify, with citations to the record, which conclusions were insufficiently explained.  [*Id.*]  Such undeveloped arguments are waived.  *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted); *Johnson v. Astrue*, 2010 WL 1190123, *6 (S.D. Ind. 2010) (claimant waived argument where she merely provided a "string of block quotes from medical records . . . devoid of any legal analysis").

formation when "the medical support is not *readily discernible*." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (quoting *Barnett*, 381 F.3d at 669) (emphasis in original). "[W]hen the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone." *Dye v. Astrue*, 2012 WL 4514108, at *9 (S.D. Ind. 2012).

Mr. Schnittker fails to explain why further expert testimony was necessary or why the medical evidence on which the ALJ relied was insufficient. Instead, he argues that the ALJ "cited no evidence regarding medical equivalence to a Listing." [Dkt. 20 at 19.] But, as mentioned above, this is simply not true; the ALJ cited portions of Mr. Schnittker's medical records in assessing whether his schizophrenia met the requirements of Listing 12.03, Paragraph B. [Dkt. 12-2 at 16.] For example, in concluding that Mr. Schnittker did not meet the third Paragraph B criteria because he only had "moderate difficulties" with "concentration, persistence or pace," the ALJ relied on Mr. Schnittker's medical records from Midtown demonstrating that his mental impairments "waxed and waned, with improvement corresponding to medications." [*Id.* (citing dkt. 12-8, 12-9).] Indeed, the ALJ's analysis of Mr. Schnittker's RFC reveals that she considered these medical records in at least some detail. [*See id.* at 18-19.]

Mr. Schnittker is correct that the ALJ did not cite the Disability Determination and Transmittal forms on which the Commissioner relies in defending the ALJ's decision.[6] Consideration of this form alone would have "satisf[ied] the ALJ's duty to consider an expert's opinion on medical equivalence." *Barnett*, 381 F.3d at 671; *see also* SSR 96-6P at *3. But explicit reliance on these forms is unnecessary, as "[a]n ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings." *Simila*, 573 F.3d at 516. This is precisely

---

[6] Although the ALJ did not explicitly rely on them, both physicians who filled out the Disability Determination and Transmittal forms concluded that Mr. Schnittker was not disabled. [Dkt. 12-3 at 2-3.] Despite this, because the ALJ did not rely on these forms, the Court must reject the Commissioner's request that it do so. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

what the ALJ did here; she reviewed the underlying medical records, contrasted them with Mr. Schnittker's subjective complaints, and concluded that the evidence did not demonstrate that the Paragraph B criteria were met.  [Dkt. 12-2 at 16.]  This is sufficient for the ALJ to comply with her duty to consult an expert's opinion on medical equivalence.  *See Simila*, 573 F.3d at 516 ("[T]he ALJ discerned and discussed the evidence upon which Dr. Caillier relied: the MMPI–2 results, his review of [the claimant's] medical records, and [the claimant's] subjective complaints.  This record was not 'inadequate.'").

Moreover, Mr. Schnittker does not even attempt to explain why the medical records on which the ALJ did rely were insufficient.  [*See* dkt. 20 at 18-19.]  Thus, contrary to his contention that this case is no different than *Barnett*, [*id.*], where the ALJ "simply assumed the absence of equivalency without any relevant discussion," 381 F.3d at 671, the ALJ here discussed each of the Paragraph B criteria in at least some detail and relied on medical records to support her conclusions.  The ALJ's decision was therefore not based on assumption or lay opinion as Mr. Schnittker asserts.  And because Mr. Schnittker does not confront the medical records on which the ALJ relied, this Court is left to speculate as to why these records were inadequate, which it will not do.  After all, "ALJs *may* contact treating physicians for further information when the information already in the record is inadequate to make a determination of disability," but they are not required to do so as a matter of course.  *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) (emphasis added).  Instead, when "[t]he record contain[s] adequate information for the ALJ to render a decision[,] [her] decision not to obtain . . . further information . . . d[oes] not render the record incomplete."  *Id.* at 844.  Accordingly, because Mr. Schnittker does not even attempt to explain what about the relied upon medical records was inadequate, this Court cannot overturn the ALJ's decision on this ground.

## C.  The ALJ's Adverse Credibility Determination

The ALJ's credibility determination is typically entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ concluded that Mr. Schnittker's statements regarding the effects of his impairments were not credible in light of the other evidence.  [Dkt. 12-2 at 18-20.]  Mr. Schnittker challenges this determination, arguing that it was "patently erroneous," "irrational," and "contrary to Social Security Ruling 96-7p."  [Dkt. 20 at 20-23.]  Specifically, he puts forth two arguments.  First, he contends that the ALJ failed to consider his GAF of 50, which, according to Mr. Schnittker, "fully corroborated [his] allegations of total disability."  [*Id.* at 20.]  Second, he argues that the ALJ's decision was "irrational" because she determined his RFC before assessing his credibility.  [*Id.*]

Mr. Schnittker fails to develop his GAF argument beyond the unadorned assertion that the ALJ failed to consider his GAF of 50 and that this is contrary to the ALJ's duty to consider

the location, duration, frequency, and intensity of his pain or other symptoms.  For the same rea-

sons discussed above, such an undeveloped argument is waived.  *See Anderson*, 836 F.2d at 349.

But even if the Court was inclined to consider the merits of this argument, it would not advance

Mr. Schnittker's position.  It is true, as Mr. Schnittker posits, that factors such as the "location,

duration, frequency, and intensity of [the claimant's] pain or other symptoms" should be consid-

ered by the ALJ.  20 C.F.R. § 404.1529(c)(3).  But the ALJ considered these and other factors in

assessing both Mr. Schnittker's RFC and credibility.  [*See* dkt. 12-2 at 17-18.]  Moreover, Mr.

Schnittker does not explain how the ALJ's failure to explicitly discuss his alleged GAF of 50

demonstrates that the ALJ failed to consider the factors set forth in the regulation or, more to the

point, that her credibility determination was erroneous.  Thus, Mr. Schnittker's reliance on his

GAF score is again unavailing.

　　　In support of his second argument—that the ALJ improperly determined his RFC before

making her credibility determination—Mr. Schnittker relies primarily on the Seventh Circuit's

decision in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), where the Seventh Circuit crit-

icized ALJs for using "boilerplate" credibility language in their decisions.  Mr. Schnittker is cor-

rect that the ALJ used the same boilerplate language in assessing his credibility.  The ALJ stated,

"After careful consideration of the evidence, the undersigned finds that the claimant's medically

determinable impairments would reasonably be expected to cause the alleged symptoms; howev-

er, the claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment."  [Dkt. 12-2 at 18.]  This boilerplate language is disfavored because, among

other reasons, it "puts the cart before the horse, in the sense that the determination of [RFC] must

be based on the evidence . . . rather than forcing the [claimant's] testimony into a foregone con-

clusion"; but the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Id.* Here, like in *Filus*, the ALJ offered reasons grounded in the evidence for her adverse credibility determination. [*See* dkt. 12-2 at 18-19.] For example, the ALJ determined that the record contains many facts inconsistent with the degree of disability Mr. Schnittker alleged, such as extensive international travel, occasional negative test results that ran contrary to Mr. Schnittker's complaints, and period during which his symptoms significantly improved in conjunction with treatment. [*See id.*] Although the Court stresses that the use of this boilerplate language is in appropriate and should not be used, in this case, its inclusion was harmless. *Filus*, 694 F.3d at 868. Accordingly, Mr. Schnittker has not provided the Court any basis to overturn the ALJ's credibility determination.[7]

### D. Whether the ALJ's Hypothetical Question to the VE Failed to Adequately Explain the Limitations Caused by Mr. Schnittker's Mental Impairments.

Based on the hypothetical the ALJ posed to the VE, the ALJ found at Step Four that Mr. Schnittker is capable of performing his past relevant work at a restaurant as a table busser, and, in the alternative, the ALJ found at Step Five that Mr. Schnittker could perform other jobs existing in the national economy such as a packer, assembler, or cleaner. [Dkt. 12-2 at 20-21.] Mr. Schnittker contends that these findings are not supported by substantial evidence because, among other things, the ALJ's hypothetical question to the VE "failed to account for [his] deficiencies in

---

[7] For the first time in his reply brief, Mr. Schnittker argues that the ALJ failed to consider the various medications that he was prescribed, which, he says, corroborate his allegations of disability. [Dkt. 27 at 5.] But again, Mr. Schnittker simply ignores the multiple references to his medications in the ALJ's decision and the ALJ's conclusion that these medications improved his conditions. [*See, e.g.*, dkt. 12-2 at 19.] Thus, this argument also fails to further his challenge to the ALJ's credibility determination.

psychological functioning as indicated by the psychiatrist's assessment of a GAF of 50."[8]  [Dkt. 20 at 24.]  Furthermore, Mr. Schnittker argues that remand is required because the ALJ's "hypothetical question fail[ed] to give full consideration to all of [the] claimant's documented impairments," [dkt. 27 at 7], including Mr. Schnittker's "deficiencies in social functioning and in concentration [sic] persistence and pace," [*id.* at 8].  The Commissioner responds that Mr. Schnittker's arguments made for the first time in his reply brief should be deemed waived and, even if they are not, the ALJ's hypothetical question to the VE was proper.[9]  [Dkt. 29 at 1-3.]  Because the hypothetical question was proper, the Commissioner argues, the ALJ properly relied on the VE's testimony that Mr. Schnittker could perform both his past work as a busser and other jobs existing in the national economy.  [Dkt. 26 at 11-13.]

The Seventh Circuit has "generally . . . required the ALJ to orient the VE to the totality of a claimant's limitations;" as relevant here, "the VE must consider . . . deficiencies of concentration, persistence and pace."  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record.") (emphasis in original).  Indeed, the Seventh Circuit observed "that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."  *O'Connor-Spinner*, 627 F.3d at 619.  Thus, "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in

---

[8] For the same reasons discussed above, Mr. Schnittker's reliance on his GAF score to demonstrate error is misplaced, thus the Court will not repeat its analysis of that argument here.

[9] Although the Commissioner's waiver argument usually carries more weight with the Court, it does not in regard to Mr. Schnittker's fourth assertion of error because the Court permitted the Commissioner to file a surreply with respect to this issue, [dkt. 28], which the Commissioner did, [dkt. 29].  Thus, the Commissioner had a fair opportunity to respond to all of Mr. Schnittker's arguments related to this issue.

order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21.

As mentioned above, the ALJ concluded that Mr. Schnittker had "moderate difficulties" regarding concentration, persistence, or pace. [Dkt. 12-2 at 16.] But these difficulties were not explicitly included in the ALJ's hypothetical to the VE. Rather, the ALJ's sole hypothetical question was whether Mr. Schnittker could perform his past employment or other jobs existing in the national economy if he was limited to "medium work" and had to "avoid interaction with the general public, avoid crowds, and avoid interaction with more than . . . one or two coworkers or supervisors at a time." [*Id.* at 87.] Considering these limitations, the VE identified several jobs in the national economy that Mr. Schnittker could perform, [*id.* at 87-88], and the ALJ relied on this testimony in reaching her conclusion, [*id.* at 20]. But the ALJ's failure to include Mr. Schnittker's moderate difficulties in concentration, persistence, or pace in the hypothetical violates the rule that such limitations be expressly included therein. *See O'Connor-Spinner*, 627 F.3d at 619-21.

There are, however, two exceptions to this rule. First, remand is not necessary when "the record indicates that the VE 'independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them.'" *Simila*, 573 F.3d at 521 (quoting *Steele*, 290 F.3d at 492); *see O'Connor-Spinner*, 627 F.3d at 619 ("We sometimes have assumed a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations."). "However, the exception does not apply if the record indicates that the VE's testimony was confined to the limitations set forth in the ALJ's hypothetical question." *Simila*, 573 F.3d at 521. Here, although the

VE was present throughout the hearing, [*see* dkt. 12-2 at 53], the ALJ's sole hypothetical question confined the limitations that the VE could consider to those listed by the ALJ, [*see id.* at 87]. Specifically, the ALJ listed the aforementioned limitations that the VE should consider, then asked whether, in light of those limitations, "[w]ould there have been any jobs that he could do?" [*Id.*] The VE's response, therefore, was confined to the expressly delineated limitations set forth in the hypothetical. Accordingly, the first exception does not apply. *See Simila*, 573 F.3d at 521.

A second exception to the rule occurs "when it [i]s manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619. "[I]n other words, when the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then the deficiencies have been accommodated." *Presser v. Colvin*, 2013 WL 5309889, at *4 (S.D. Ind. 2013). This exception "most often [applies] . . . when [the] claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619. Here, as stated above, the ALJ found that Mr. Schnittker had the following severe impairments: "HIV, COPD, migraine headaches, paranoid schizophrenia, attention deficit hyperactivity disorder, anxiety disorder, conversion disorder, posttraumatic stress disorder, and dissociative disorder." [Dkt. 12-2 at 14.] The evidence of these impairments led the ALJ to conclude that Mr. Schnittker had moderate difficulties with concentration, persistence, or pace, specifically due to his reported "anxiety, panic, nightmares, and flashbacks." [*Id.* at 16.] Even if the ALJ's hypothetical—requiring Mr. Schnittker to "avoid interaction with the general public, avoid crowds, and avoid interaction with more than . . . one or two coworkers or supervisors at a time," [dkt. at 87]—arguably excludes the triggers for Mr. Schnittker's anxiety and panic (yet even this is unclear), it certainly does not account for all of his impairments, or even all of the

- 15 -

symptoms specifically noted by the ALJ stemming therefrom, such as his flashbacks.  Without a more detailed hypothetical or explanation of how the ALJ concluded that this was the sole work restriction she needed to include, "the Court cannot be certain that the VE was sufficiently focused on identifying jobs that [the claimant] could perform despite these limitations."  *Yost v. Astrue*, 2012 WL 2814373, at \*20 (N.D. Ill. 2012) (distinguishing *Simila* on similar grounds).[10]

The hypothetical's deficiency is clear when compared with the hypothetical the Seventh Circuit approved in *Simila*.  There, the claimant also had moderate difficulties with concentration, persistence, or pace, stemming from his "chronic pain syndrome and somatoform disorder."  *Simila*, 573 F.3d at 522.  But, unlike here, in *Simila*, the ALJ's first hypothetical included a description of "all of [the claimant's] credible impairments, physical and mental, including [his] chronic pain and somatoform," and for the second hypothetical, stated that "because of the allegations of pain, I would also further limit [the claimant] to unskilled [work]."  *Id.* at 521.  Because the claimant's impairments were "rooted in [his] allegations of pain," the Seventh Circuit concluded that, "by limiting the hypothetical to unskilled work, the ALJ incorporated all of [the

---

[10] Notably, the ALJ alluded to the fact that her first and only hypothetical for the VE was intended to be the first of several.  [*See* dkt. 12-2 at 87 (referring to a "few hypotheticals" she would present to the VE and stating "let's first start out with" her lone hypothetical).]   However, no other hypotheticals were presented.

claimant's] credible limitations."[11]   *Id.* at 522; *see O'Connor-Spinner*, 627 F.3d at 620 (stating

that the ALJ's hypothetical in *Simila* was sufficient because "the link between the claimant's

pain and his concentration difficulties was apparent enough that incorporating those difficulties

by reference to his pain was consistent with the general rule").   Although the Seventh Circuit ul-

timately upheld the ALJ's hypothetical on these grounds, it still described the hypothetical as

"troubling," *Simila*, 573 F.3d at 521, and has since described it as "just barely" falling within the

second exception, *O'Connor-Spinner*, 627 F.3d at 620.

        If the hypothetical in *Similia* was barely sufficient, the hypothetical here was certainly in-

adequate.   As discussed above, unlike in *Similia*, the ALJ here did not describe Mr. Schnittker's

impairments (including, among others, paranoid schizophrenia, attention deficit hyperactivity

disorder, anxiety disorder, and dissociative disorder) or the difficulties they caused (anxiety, pan-

ic, nightmares, and flashbacks) in the hypothetical at all.   [Dkt. 12-2 at 87.]   Instead, with respect

to his mental impairments, the ALJ only stated that Mr. Schnittker needed to avoid interaction

with others.   [*See id.* at 87.]   This, unlike in *Similia*, does not "link" Mr. Schnittker's impairments

and his moderate difficulties with concentration, persistence, or pace.   *O'Connor-Spinner*, 627

F.3d at 620.   And even if the lone hypothetical arguably creates a link between *some* of his im-

---

[11] The Court notes that, to the extent a limitation to unskilled work can be inferred from the
ALJ's hypothetical, this would not salvage what is otherwise an inadequate hypothetical.   The
Seventh Circuit has rejected "the broad proposition that an ALJ may account generally for mod-
erate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled
work."   *O'Connor-Spinner*, 627 F.3d at 620.   This is because "[t]he ability to stick with a given
task over a sustained period is not the same as the ability to learn how to do tasks of a given
complexity."   *Id.*; *see also* SSR 85-15, 1985 WL 56857, at *6 ("Because response to the de-
mands of work is highly individualized, the skill level of a position is not necessarily related to
the difficulty an individual will have in meeting the demands of the job.   A claimant's condition
may make performance of an unskilled job as difficult as an objectively more demanding job.").
Cases, such as *Simila*, that appear to be contrary to this rule are distinguishable because, in those
cases, the link between the impairments and the limitations was otherwise made clear by the hy-
pothetical.   *See O'Connor-Spinner*, 627 F.3d at 619-20.

pairments and the difficulties in concentration, persistence, or pace that they cause (such as his

impairments causing anxiety and panic that could be triggered by interacting with others), it cer-

tainly did not avail the VE of *all* Mr. Schnittker's limitations (such as those causing flashbacks),

as is required. *Cf. O'Connor-Spinner*, 627 F.3d at 619 (holding that the ALJ is "generally . . .

required . . . to orient the VE to the totality of a claimant's limitations"); *Steele*, 290 F.3d at 942

("Hypothetical questions posed to vocational experts ordinarily must include *all* limitations sup-

ported by medical evidence in the record.") (emphasis in original).  Thus, the second exception

also does not apply.[12]

Because neither exception applies, the ALJ needed to refer "expressly to limitations on

concentration, persistence and pace in the hypothetical in order to focus the VE's attention on

these limitations and assure reviewing courts that the VE's testimony constitutes substantial evi-

dence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620-21.  As discussed

above, she did not.  Therefore, contrary to Seventh Circuit precedent, the ALJ did not provide the

VE "with a complete picture of a claimant's [RFC]," and specifically, did not allow the VE to

"consider [Mr. Schnittker's] deficiencies of concentration, persistence, and pace." *Jelinek v.*

*Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) (citation and quotation marks omitted).  Accordingly,

the ALJ's determination that Mr. Schnittker was not disabled was reached in error, and the Court

---

[12] Nor is this a case where the ALJ "reasonably relied" on a medical expert who "translated [his or her] findings into a specific RFC assessment" and presented that assessment to the VE.  *Jo-hansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002); *see Patton v. Astrue*, 2012 WL 6094180, at *14 (S.D. Ind. 2012) (relying on *Johansen* to distinguish *O'Connor-Spinner*).  The ALJ here did not rely on a specific medical expert's RFC determination.  As far as the Court can tell from the ALJ's findings, her RFC determination was reached solely via her own assessment of the medical evidence.  [*See* dkt. 12-2 at 15-17.]  If that is not the case, the ALJ's opinion certainly does not reveal that to the parties or the Court.

must therefore remand the case for further proceedings.[13]  *See O'Connor-Spinner*, 627 F.3d at

621 (concluding that the ALJ failed to inform the VE of the totality of the cl          ns

and therefore remanding to the SSA for further proceedings).

## IV.
### CONCLUSION

For the reasons stated herein, the ALJ's denial of relief is **REVERSED** and the case is

**REMANDED** for further proceedings consistent with this opinion.  Judgment shall issue accord-

ingly.

09/27/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

---

[13] Because we reverse on this ground, we need not reach Mr. Schnittker's alternative argument
that "under the ALJ's own appraisal of the claimant's impairments he would not be able to per-
form his past work as a busboy."  [Dkt. 27.]

- 19 -